**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joel Ronald Spitzkoff,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>　　　　　Defendant. | No. CV-10-1445-PHX-DGC<br><br>**ORDER** |

　　　　Plaintiff applied for disability insurance benefits on April 18, 2006, claiming to be disabled since November 1, 2004. *See* Doc. 12, Tr. 84-86. The application was denied. Tr. 45-46. A hearing before an Administrative Law Judge (ALJ) was held on July 22, 2008. Tr. 20-24. The ALJ issued a written decision on September 30, 2008, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 8-15. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 1-3.

　　　　Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc 1. For reasons that follow, the Court will affirm Defendant's decision denying benefits.

**I.　Standard of Review.**

　　　　The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.*

**II.     Discussion.**

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has engaged in no substantial gainful activity since the alleged onset date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. § 404.1520.

Plaintiff has met his burden at steps one and two. He has not engaged in substantial gainful activity since November 1, 2004. Tr. 8, 14 ¶ 2. He has multiple severe impairments: insulin dependent diabetes mellitus, neuropathy, herniated nucleus pulposus at C5-C6, status post bilateral bunion surgery, hand arthritis, and bilateral carpal tunnel syndrome. Tr. 9, 14 ¶ 3. Plaintiff concedes at step three that his impairments do not constitute a listed impairment. Tr. 23. The ALJ concluded at step four that Plaintiff has the RFC to perform sedentary skilled work, and his impairments therefore do not preclude him from performing his past work as a manager and consultant for a utility company. Tr. 10-13, 14 ¶¶ 6-8.

Plaintiff argues that the ALJ erred in two respects: failing to consider the manipulative limitations caused by his carpal tunnel syndrome and arthritis, and rejecting his symptom testimony without providing sufficient reasons. Doc. 18. Defendant contends that the ALJ did not err and his decision is supported by substantial evidence. Doc. 20.

### A. Manipulative Limitations.

The ALJ gave several legitimate reasons for finding that Plaintiff's carpal tunnel syndrome caused no limitations on his ability to engage in repetitive hand movements. First, an examination in March 2007 (Tr. 211-14) showed full range of motion in the wrists and fingers, normal muscle strength in the upper extremities, a grip strength in each hand of 60 pounds, and no thenar (thumb muscle) atrophy in either hand. Tr. 10, 12. The ALJ noted, correctly, that the lack of muscle atrophy or weakness is inconsistent with Plaintiff's claimed disuse of his hands. Tr. 10. Second, Plaintiff has received only minimal treatment for his carpal tunnel syndrome, and no treatment for that condition since 2006. Tr. 10-11; *see* Tr. 31-32. Third, Plaintiff was willing to consider a very invasive surgical procedure for his neck pain despite his slow healing from diabetes, but has chosen not to have recommended surgery for his carpal tunnel syndrome. The ALJ was entitled to infer from the decision not to have surgery that Plaintiff's hand limitations do not impact the quality of his life as much as alleged. Tr. 11. Finally, in support of his RFC determination, the ALJ found that Plaintiff engaged in daily activities requiring the repetitive use of his hands, including driving, grocery shopping, laundry, taking care of the swimming pool, and reading the newspaper. Tr. 12-13. These reasons for finding no manipulative limitations from carpal tunnel syndrome are not only legitimate, but also are supported by substantial evidence.

Plaintiff asserts that there is no record evidence showing that "commonly prescribed conservative treatments" for carpal tunnel syndrome would have alleviated his condition. Doc. 18 at 14. But the ALJ found that Plaintiff "did not even think about going for treatment" (Tr. 11), and this finding is supported by the record (Tr. 32). Plaintiff's failure to consider physical therapy or other conservative treatment for carpal tunnel syndrome supports the conclusion that any manipulative limitations are not as severe as he claims. Contrary to Plaintiff's assertion (Doc. 18 at 15), the ALJ did not impermissibly "play doctor" by considering Plaintiff's failure to consider or receive

treatment.

Plaintiff further asserts that even if he were to receive treatment for his carpal tunnel syndrome, he would still suffer from arthritis in his hands. Doc. 18 at 15. The ALJ erred, Plaintiff contends (*id.* at 16-19), by rejecting Dr. Adler's advice that Plaintiff "avoid repetitive activity" (Tr. 254) solely on the ground that it was based on Plaintiff's subjective allegations. But this was not the sole reason the ALJ provided for discounting Dr. Adler's recommendation. The ALJ noted, correctly, that the doctor prescribed only conservative treatment (Tr. 11), and Plaintiff does not dispute that he takes only Celebrex for his arthritis (Tr. 32). Dr. Adler found that Plaintiff "is not advanced enough to advise a surgical procedure," and told him to "stay active" and take part in a "general exercise program." Tr. 254. A paraffin wax bath also was suggested. *Id.* Dr. Adler's examination of the right hand showed that Plaintiff "cannot quite make a full fist and does not completely extend." *Id.* The ALJ concluded that Dr. Adler's "abnormal clinical findings are not significant" or otherwise consistent with Plaintiff's "allegations of disabling hand pain." Tr. 11. This is a clear and convincing reason for discounting Dr. Adler's advice to avoid repetitive activity.

In summary, the ALJ did not err in finding no manipulative limitations stemming from Plaintiff's carpal tunnel syndrome and arthritis.

### B.     Symptom Testimony.

Plaintiff testified at the hearing that due to his carpal tunnel syndrome, any repetitive motion of more than five minutes results in numbness and a "pins and needles" sensation in his hands. Tr. 33. He claimed that his arthritis causes severe pain lasting more than a day after fifteen minutes of repetitive motion. Tr. 37. The ALJ found this testimony not credible. Tr. 10.

There is no dispute that Plaintiff's impairments could reasonably produce some symptoms. Given this fact, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for her adverse credibility

finding.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The ALJ has met her burden.

The adverse credibility finding is supported by the same convincing reasons the ALJ provided for her RFC determination and the discounting of Dr. Adler's advice to avoid repetitive activity.  In concluding that Plaintiff's allegations of severe limitations are not supported by the medical evidence as a whole, the ALJ noted that the claimed disuse of his hands would have resulted in "some showing of atrophy or weakness."  Tr. 10.  The ALJ also explicitly found that Plaintiff's "lack of overall treatment, his failure to follow prescribed treatment and his failure to even consider treatment tends to lessen his credibility regarding the extent of his pain and limitations regarding his ability to use his hands."  Tr. 11.

The ALJ further found Plaintiff's subjective complaint testimony inconsistent with his daily activities.  Tr. 12-13.  Although a claimant need not be "utterly incapacitated" in order to be eligible for benefits, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), the ALJ may consider daily activities in making her credibility determination, *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Plaintiff testified that he is able to drive, go shopping, do the laundry, prepare simple meals, and take care of the swimming pool.  Tr. 35.  He visits his children and grandchildren several times a week, and meets with friends once or twice a week.  Tr. 35-36.  He is an avid reader, spending three hours a day with the newspaper and other reading material.  Tr. 36.  While some of these activities may not show an ability work, they do tend to negate Plaintiff's testimony that his hands go numb and cause severe pain after only several minutes of repetitive hand motion.  Tr. 33, 37.  The ALJ "properly considered Plaintiff's daily activities in finding [his] testimony incredible."  *Curry v. Astrue*, No. 09-CV-2580-PHX-GMS, 2010 WL 3789535, at *6 (D. Ariz. Sept. 22, 2010); *see Thomas*, 278 F.3d at 958-59 (the ALJ did not err in rejecting the claimant's symptom testimony where the claimant was able to perform various chores such as cooking, laundry, and shopping).

Plaintiff asserts that in order for daily activities to detract from the credibility of symptom testimony, there must be a showing that the claimant spends a substantial part of his day in those activities. Doc. 18 at 22. Given the numerous activities Plaintiff engages in on a daily basis, *see* Tr. 35-36, it was reasonable for the ALJ to infer that a substantial part of his day is spent on those activities. It is worth noting that the ALJ explicitly found that Plaintiff's "ability to concentrate sufficiently to read for three hours a day belies his allegations of disabling pain." Tr. 13.

Plaintiff further asserts that the ALJ made no connection between his activities and the ability to work. Doc. 18 at 23. But the ALJ explicitly found that Plaintiff's "activities are consistent with being able to perform work activity within the sedentary [RFC] capacity reached herein." Tr. 12.

In summary, the ALJ "gave specific, clear and convincing reasons for discounting [Plaintiff's] testimony." *Thomas*, 278 F.3d at 959. Because those reasons are supported by substantial evidence in the record, the Court "may not engage in second-guessing." *Id.*

### III. Conclusion.

Because substantial evidence supports that ALJ's decision and the ALJ committed no legal error, the decision denying benefits must be affirmed. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court therefore need not decide whether the case should be remanded for further proceeding or an award of benefits.

**IT IS ORDERED:**

1. Defendant's decision denying disability insurance benefits is **affirmed**.
2. The Clerk is directed to enter judgment accordingly.

Dated this 15th day of March, 2011.

David G. Campbell
United States District Judge